UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL JOHNSON                              : CIVIL ACTION NO.
   Plaintiff                                          3:15-cv-00271-WWE

v.

ROAD READY USED CARS, INC.,
RONALD SARACINO and GATEWAY
ONE LENDING & FINANCE, LLC,
   Defendants                                   : NOVEMBER 11, 2015

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

**I    INTRODUCTION**

Defendants have moved to dismiss this action due to claimed lack of subject matter jurisdiction. However, Plaintiff alleges facts in his complaint that support claims for very significant punitive damages against the defendants. When those claimed punitive damages are added to Plaintiff's actual damage claims, the Complaint asserts claims that satisfy the monetary thresholds for diversity jurisdiction under 28 U.S.C. § 1332 ($75,000) and under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B) ($50,000). For purposes of ruling on the motion to dismiss, these well-pled allegations must be accepted as true, and all reasonable inferences must be drawn in favor of the Plaintiff. Consequently, it cannot be determined that it is "legally certain" that Plaintiff will recover less than the jurisdictional amounts, and the motion to dismiss should be denied.

## II    PLAINTIFF'S CLAIMS

### A. Factual Allegations

When deciding a motion to dismiss, the Court must accept all well pleaded allegations as true and draw all reasonable inferences in favor of the pleader.[1] In this case, Plaintiff has alleged that Road Ready and its principal, Ronald Saracino, falsely represented that a 2004 Toyota Tacoma truck had been inspected for rust and was safe and roadworthy. In reality, the truck was sold in a dangerous and unsafe condition.

The 2004 Toyota Tacoma is notorious within the automotive industry for having problems with frame rust, and Road Ready knew of this reputation.[2] This particular vehicle had corrosion on the frame that was severe enough that the right rear shock absorber was no longer connected to the frame of the vehicle. Additionally, the frame was so rusted that its strength was compromised to the point that it would not support any weight in the payload and would not provide reaction in the manner designed in the event of a collision; the frame had cracks in critical locations, and much of the steel had delaminated.[3] All of this left the truck in a condition that rendered it not roadworthy, and the only means of resolving the defects was to replace the frame.[4] The truck was also sold with a rotted muffler that created a risk of carbon monoxide and exhaust fumes entering the cabin.[5]

These conditions would be apparent and obvious to any automotive professional who performed the inspections that Road Ready claims that it performs.[6]

---

[1] *Hishon v. King,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).
[2] Complaint, ¶ 17-18.
[3] Complaint, ¶ 19(a)(b)(c)(d).
[4] Complaint, ¶ 19-20
[5] Complaint, ¶ 21.
[6] Complaint, ¶ 22.

Despite the vehicle's unsafe condition, Road Ready advertised the truck on its own website and on other websites stating "The truck is in excellent condition and is not all rusted out like a lot of them you've seen out there."[7]  Road Ready also advertises on its website that its inventory is submitted to a "Safety and Maintenance" inspection that includes a check of the frame for frame damage, rust, and cracks; it also claims that it "certified and handpicks" the vehicles that it sells to ensure that they are "Road Ready."[8]

Prior to purchasing the truck, Plaintiff saw these advertisements and representations regarding the truck and Road Ready's inspection process, and he believed those representations.[9]  He traveled to Connecticut to look at the truck, and he was told by Road Ready's employee that the prior owner of the truck had taken "excellent care" of the truck and had used it to haul leaves; these statements were without any basis in fact because Road Ready had purchased the truck at auction and had no knowledge of the truck's prior ownership or use.[10]

Plaintiff purchased the truck for a total price of $14,173.86, paying a $4,000 down payment and financing the remaining $10,173.86 under a retail installment contract that Road Ready assigned to the defendant Gateway One Lending & Finance, LLC ("Gateway").[11]  As part of the purchase transaction, Road Ready provided Plaintiff with a certified CT DMV K-208 form as required by Conn. Gen. Stat. § 14-62g in which it certified that it had inspected the truck's frame/chassis and the exhaust, that those items had passed the inspection, and that the truck was deemed to be in a condition for

---

[7] Complaint, ¶ 16.
[8] Complaint, ¶ 14-15.
[9] Complaint, ¶ 23-25.
[10] Complaint, ¶ 27-28.
[11] Complaint, ¶33-35.

3

legal operation on public highways.[12]  Such an inspection constitutes an affirmation that the Vehicle can be legally driven on state highways. *See* C.G.S. § 14-62(g).

Shortly after delivery, Plaintiff discovered the unsafe condition of the truck, and he notified Road Ready and requested a refund.  Road Ready refused the demand and disputed that the frame was rotted or unsafe to drive, and it refused to replace the frame,[13] even though frame replacement was the only means of correcting the defect.[14] Plaintiff returned the truck to Road Ready and served notice to Road Ready and to Gateway that he had revoked acceptance of the truck.[15]  Plaintiff has not received a refund of the $4,000 down payment, and the defendants continue to claim the balance of $10,173.86 plus interest.[16]

### B. Plaintiff's Actual Damages Claims

Plaintiff has alleged as actual damages the $4,000 that he paid as a down payment.  He also claims consequential damages of $572.81 for inspections and insurance.[17]  He also claims as consequential damages compensation for the loss of use of the Vehicle at the fair rental rate of $200/week.[18]  Those damages totaled $857 as of the date of the filing of the complaint, and they total $8,200 as of the date of this filing.  These damages will continue to accrue until the $4,000 is refunded and Mr. Johnson is released from any claims the defendants claim against him under the contract.  The total actual damages alleged in the Complaint measured $5,429.81 as of

---

[12] Complaint, ¶38, 92.
[13] Complaint, ¶ 42-47.
[14] Complaint, ¶ 20.
[15] Complaint, ¶ 50.
[16] Complaint, ¶ 35, 51-51. Subsequent to the initiation of this action, Road Ready has paid Gateway the balance claimed under the contract, but it has not released Plaintiff from claimed liability under that contract but has instead maintained that the revocation of acceptance was improper.
[17] Complaint, ¶ 56-57.
[18] Complaint, ¶ 58.

4

the date of the filing.  Those damages measure $12,772.81 as of the date of this brief.[19]

Plaintiff acknowledges that these actual damage claims are not sufficient to meet the jurisdictional threshold on their own, and he relies upon his claims for punitive damages to satisfy those requirements. As shown below, it is plausible that Plaintiff will recover punitive damages under CUTPA that will bring the total recovery to greater than $75,000. Additionally, it is also plausible that he will recover common law punitive damages under Magnuson-Moss that will bring the total recovery under that claim to more than $50,000. Accordingly, it cannot be determined as a legal certainty that the allegations regarding jurisdiction are false.

## III   LEGAL ARGUMENT

### A.  The Legal Standard

The Plaintiff, as the party asserting federal jurisdiction, bears the burden of establishing that it is proper. This burden, however, is not a heavy one; Plaintiff must show only that it does not "appear to a legal certainty that the claim is really for less than the jurisdictional amount."[20] As shown below, Plaintiff has alleged serious conduct that would justify the imposition of very considerable punitive damages that would extend his recovery in excess of the relevant jurisdictional limits. Plaintiff seeks those damages earnestly and in good faith, and there is considerable case law and precedent

---

[19] The damages claim for purposes of determining the amount in controversy are measured as of the date of the filing of the complaint.  *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 62  (2d Cir. 1999). However, the additionally accrued damages that will be claimed at trial are become relevant for purposes of considering the due process limitations on punitive damages, as discussed at Section III (D) below.

[20] *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Horton v. Liberty Mutual Insurance Co.,* 367 U.S. 348, 353, 81 S. Ct. 1570, 1573, 6 L.Ed.2d 890 (1961)(the amount in controversy is to be determined from the complaint itself, and, absent a showing that the amount claimed was not sought in good faith, it "`must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal).

5

supporting his claims. Consequently, it cannot be stated that it is a legal certainty that the claim is for less than the jurisdictional amount.

### B. Plaintiff May Recover More Than $70,000 In Punitive Damages, and Diversity Jurisdiction Exists

Defendants' Memorandum of Law in support of its motion focuses almost exclusively on the jurisdictional claim under Magnuson-Moss, and it all but ignores the claim of jurisdiction under 15 U.S.C. § 1332.  Jurisdiction is proper under that statute, because the parties are of diverse citizenship and because Plaintiff alleges in his complaint that the claimed damages are in excess of the jurisdictional threshold of $75,000:

> Jurisdiction in this Court is also proper pursuant to 28 U.S.C. § 1332, because the parties are of diverse citizenship and the amount in controversy, when potential common law and statutory punitive damages are included, is more than $75,000.[21]

The Supreme Court has stated that "[w]here both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount."[22]  In a case such as this, where actual damages are less than the jurisdictional amount, "the question remains whether it is apparent to a legal certainty from the complaint that [the Plaintiff] could not recover, in addition, sufficient punitive damages to make up the requisite [jurisdictional amount]."[23]  As the

---

[21] Complaint, ¶7; see also ¶ 67 (claim for common law punitive damages against Road Ready for tortious breach of implied warranty); ¶ 76 (claim for common law punitive damages against Road Ready for tortious breach of express warranty); ¶81(seeking common law punitive damages against Road Ready and and Saracino  for fraudulent misrepresentation), ¶ 87 (seeking common law punitive damages against Road Ready and Saracino for reckless misrepresentation); and ¶ 96 (seeking statutory punitive damages against Road Ready and Saracino under CUTPA).
[22] *Bell v. Preferred Life Society*, 320 U.S. 238, 240 S. Ct. 5, 6, 88 L.Ed. 15 (1943); *see also LeBlanc v. Spector,* 378 F. Supp. 301, 305 (D. Conn. 1973).
[23] *Id.*

district court noted in *LeBlanc v. Spector,* "[t]his rule as to punitive damages is but an application of the more general rule that 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."[24] Such damages as may be speculated upon by the Plaintiff are determinative unless not possible to a legal certainty or determined in bad faith.[25] "The district court further noted that "[a]bsent some objective evidence of bad faith, cases passing on the jurisdictional sufficiency of claims relying on exemplary damages to reach the jurisdictional amount have consistently held that dismissal is warranted only where the applicable law does not permit the award of *any* punitive damages."[26]

Plaintiff claims statutory punitive damages against Road Ready and Saracino under CUTPA. "[P]unitive damages are available [under CUTPA] when there is evidence of a reckless indifference to the rights of others or an intentional and wanton violation of those rights...." [27] Such damages are recoverable in addition to attorney's fees and, unlike Connecticut common law punitive damages, are not limited to the cost of bringing the action.[28]

There is ample precedent for punitive damage awards under CUTPA of more than $70,000, even when plaintiffs recovered little or nothing for compensatory damages. *See e.g., MedvalUSA Health Programs, Inc. v. MemberWorks, Inc.,* 273 Conn. 634, 638 (2005)(no damages awarded but $5 million punitive awarded by arbitration panel);

---

[24] 378 F. Supp. at 305, *quoting St. Paul Mercury Indem. Co., v. Red Cab Co.,* 303 U.S. 283, 288-289, 58 S. Ct. 586, 590 (1938).
[25] *Id.* at 306.
[26] *Id.* at 307 (emphasis in original).
[27] *Staehle* v.*Michael's Garage, Inc.,* 35 Conn. App. 455, 462-63 (1994); *Gargano* v. *Heyman,* 203 Conn. 616, 622 (1987); *Tessmann* v.*Tiger Lee Construction Co.,* 228 Conn. 42, 54, (1993).
[28] *Ulbrich v. Groth,* 310 Conn. 375 (2013).

*Hadelman v. Deluca,* 274 Conn. 442, 446 (2005)(arbitration panel awarded no compensatory damages and $300,000 in punitive damages); *Emerald Investments, LLC v. Porter Bridge Loan Co.,* 2007 WL 1834507 at *9 (D. Conn. 2007)($1.1 million punitive damages awarded); *Thorsen v. Durkin Development, LLC,* 129 Conn. App. 68, 77 (2011)($30,221 in compensatory damages and $266,000 in punitive damages). These cases demonstrate that it can not be established to a legal certainty that a $70,000 punitive damages award cannot be obtained in this case.

### C. Plaintiff May Recover More Than $45,000 In Common Law Punitive Damages Under Magnuson-Moss, And Federal Jurisdiction Exists

The Defendants' argument regarding Magnuson-Moss is based upon a fundamental misunderstanding of the jurisdictional claim. Specifically, their argument presumes that Plaintiff seeks to include attorney's fees awarded under Magnuson-Moss in order to reach the jurisdictional threshold of $50,000. That is not correct. The jurisdictional argument under Magnuson-Moss is predicated upon Plaintiff's claim for common law punitive damages, which are claimable as a contract remedy under Connecticut law and not as costs under Magnuson-Moss. And, even if the defendants' understanding of the jurisdictional argument was correct, their substantive argument regarding the basis for fee awards under Magnuson-Moss is contrary to the overwhelming weight of authority.

Magnuson-Moss provides for federal jurisdiction if the amount in controversy is $50,000 or greater, exclusive of interests and costs.[29] The amount in controversy must be "computed on the basis of all claims to be determined in this suit".[30] The "amount in

---

[29] 15 U.S.C. § 2310(d)(1)(B).
[30] 15 U.S.C. § 2310(d)(3)(B).

8

controversy" is determined "by an evaluation of the controversy described in the plaintiff's complaint and the record as a whole as of the time the case was filed."[31]  As discussed above, the complaint is generally dispositive of the jurisdictional threshold, as long as the claim appears to be made in good faith.

While courts have consistently determined that attorney's fees must be excluded from the "amount in controversy" as costs, this Court held in *Angelillo* and *Makuch* that punitive damages for bad faith breach of warranty (which are distinct from legal expenses and merely based upon attorney's fees) are properly included in the amount in controversy.[32]  Accordingly, this Court denied motions to dismiss for lack of jurisdiction in both cases.

In holding that the amount in controversy in *Angelillo* exceeded $50,000, the Court noted that the plaintiff's attorney[33] had submitted an affidavit that, in cases of that nature, the cost to conduct a jury trial would be approximately $50,000; the Court affirmed this estimate, stating, "the Court finds it to be a reasonable expectation of total attorney's fees should the case proceed to trial."[34]  Plaintiff has submitted a comparable Declaration in this action.

The *Angelillo* and *Makuch* cases stand for several propositions.  First, consistent with Connecticut substantive law, common law punitive damages, measured by the amount of attorney's fees, are recoverable for tortious or bad faith breach of warranty claims against a car dealer.  Second, such damages are properly included for purposes

---

[31] *Schimmer v. Jaguar Cars, Inc.* 384 F. 3d 402, 406 (7th Cir. 2004); citing *Uhl v. Thoroughbred Tech & Telecomms, Inc.,*  309 F 3d 978, 983 (7th Cir. 2002).
[32] *Angelillo v. Harte Nissan, Inc.*, 2010 WL 569887 (D. Conn. 2010); *Makuch v. Stephen-Pontiac-Cadillac, Inc.*, 2013 WL 45887 (D. Conn. 2013).
[33] The undersigned notes that he was the attorney for Plaintiff in *Angelillo.*
[34] 2010 WL 569887 at *4.

9

of determining jurisdiction under Magnuson-Moss.  Third, the relevant measure is not the fees accrued to the date of jurisdiction but the amount estimated in good faith at the commencement of the action should the case proceed to trial.

### 1. Common Law Punitive Damages Are Based Upon Connecticut State Law, Not Magnuson-Moss

Defendants argue that Plaintiff's potential recovery for common law punitive damages is limited to $750, because that is the extent of his obligation to pay attorney's fees if he is not successful in this action.  As shown below, the Defendants are incorrect, because fee awards are made under Magnuson-Moss in the same fashion as in other fee-shifting cases.  Nevertheless, the defendants' argument incorrectly assumes that Plaintiff's claim for common law punitive damages is derived from Magnuson-Moss.

The claim for common law punitive damages arises under Connecticut common law, not Magnuson-Moss.  As this Court noted in Angelillo: "["u]nder Connecticut law, punitive damages are available for a claim of breach of warranty if plaintiff alleges conduct that is "done with a bad motive or with a reckless indifference to the interests of others."[35]  The attorney's fee provision in *Magnuson-Moss* simply has no bearing on the determination of these common law punitive damages, which are measured by the Plaintiff's fees, regardless of whether those fees are fixed or contingent.

### 2. Attorney's Fees Under Magnuson-Moss Are Based Upon Hours of Work

In any event, a Plaintiff need not actually pay or become responsible for

---

[35] *Angelillo,* at *3, *citing L.F. Pace & Sons, Inc. v. TravelersIndemnity Co.,* 9 Conn.App. 30, 48, 514 A.2d 766 (1986).

attorney's fees in order to recover them under Magnuson-Moss.  Defendants cite no cases in support of their argument, and Plaintiff's counsel is not aware of any court that has limited fees in that fashion.  Indeed, numerous courts have determined fee awards under Magnuson-Moss using the same principles utilized under other fee-shifting statutes, i.e., an examination of the lodestar value and adjustment based upon a variety of factors.[36]

---

[36] *See e.g. Ernst v. Deere & Co.*, 92 Conn. App. 572, 886 A.2d 845 (2005) (fees awarded based upon work performed, but reduced for work following a partial settlement); *Moshir v. Automobili Lamborghini Am. L.L.C.*, 927 F. Supp. 2d 789 (D. Ariz. 2013) (applying lodestar analysis; making substantial reductions for duplicative and unnecessary work, especially time that was necessary to bring inexperienced counsel up to speed); *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 (E.D. Cal. Sept. 6, 2013) (applying lodestar analysis; awarding $47,760 in fees); *Gill v. Bluebird Body Co.*, 353 F. Supp. 2d 1265 (M.D. Ga. 2005) (using the lodestar analysis; multiplying reasonable hourly rate by hours reasonably expended, and then accounting for other considerations that require enhancement or reduction of the fee), rev'd on other grounds, 147 Fed. Appx. 807 (11th Cir. 2005) (buyer's lack of privity bars action; thus fee award also vacated); Am. Sec. Mortgage v. Mercedes Benz of N. Am., Inc., 1998 WL 70609 (N.D. Ill. Feb. 11, 1998) (applying lodestar analysis to Magnuson-Moss fees); *Cooper v. Great Mileage Rides, Inc.*, 272 P.3d 1287 (Kan. Ct. App. 2012) (table) (applying lodestar) *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912 (9th Cir. 2005) (Nev. law) (affirming fee award; upholding trial court's use of reduced hourly rate and reduction of hours for duplication); *Hines v. Chrysler Corp.*, 971 F. Supp. 212 (E.D. Pa. 1997) (fees of $3663.63 when plaintiff won $2500); *McLaughlin v. Ford Motor Co.*, 1997 WL 185942 (E.D. Pa. Apr. 14, 1997) (fees of $16,458.25; compensatory damages of $17,985.35); *Skelton v. Gen. Motors Corp.*, 661 F. Supp. 1368 (N.D. Ill. 1987), aff'd in part, rev'd in part, 860 F.2d 250 (7th Cir. 1988) ($2.6 million in fees); *Horton Homes, Inc. v. Brooks*, 832 So. 2d 44 (Ala. 2001) ($34,612.50 in fees); Universal Motors, Inc. v. Waldock, 719 P.2d 254 (Alaska 1986) (affirming fees of $36,526 plus costs and expert witness fees; $17,685 actual damages);: *Holland v. Baja Marine Corp.*, 1999 Del. Super. LEXIS 512 (Del. Super. Ct. Nov. 3, 1999); *Razor v. Hyundai Motor Am.*, 349 Ill. App.3d 651, 813 N.E.2d 247, 262, (2004) (affirming award of $12,277 in fees and costs on $8500 damages), aff'd in relevant part, 854 N.E.2d 607 (Ill. 2006); *Lockhart v. Cmty. Auto Plaza, Inc.*, 695 N.W.2d 335 (Iowa Ct. App. 2004) (affirming award of 252.3 hours at $175 per hour plus appellate fees); *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 657 P.2d 517 (1983); *Champion Ford Sales, Inc. v. Levine*, 49 Md. App. 547, 433 A.2d 1218 (1981) (remanding for determination of fees); *Kammeraad v. Auto Sports Unlimited*, 61 U.C.C. Rep. Serv. 2d 873 (Mich. Ct. App. 2007); *Hengl v. Newmar Corp.*, 2003 WL 23833290 (Minn. Dist. Ct. May 16, 2003) ($60,580.50 in fees after verdict requiring buyback of motor home); *Fedders Corp. v. Boatright*, 493 So. 2d 301 (Miss. 1986) (fees and trial expenses of $5310.74, with actual damages of $3000); Royal Lincoln-Mercury Sales v. Wallace, 415 So. 2d 1024 (Miss. 1982) (damages of $13,812.50; $2162.50 for fees); *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1 (Pa. 2011) (affirming $3 million lodestar award, but reversing trial court's use of multiplier); *Alvine v. Mercedes-Benz of N. Am., Inc.*, 620 N.W.2d 608 (S.D. 2001) (affirming award of $47,328.50); Spencer v. Golden Rule, Inc., 1995 Tenn. App. LEXIS 492 (Tenn. Ct. App. July 19, 1995); *Love v. Kenneth Hammersley Motors, Inc.*, 556 S.E.2d 764 (Va. 2002) (awarding Magnuson-Moss attorney fees for state law breach of warranty claim; defendant conceded entitlement); *Massingale v. Northwest Cortez, Inc.*, 27 WI. App. 749, 620 P.2d 1009 (1980) (amount not specified); *Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, 734 N.W.2d 169 (2007) (affirming award of $13,481.26 in damages and $11,250 in attorney fees for breach of service contract; remanding for consideration of appellate fees); see also *Basselen v. Gen. Motors Corp.***,** 341 Ill. App.3d

11

These courts have followed the language of Magnuson-Moss, which provides that attorney's fees are to be "based on the actual time expended" in prosecuting a case.[37]

Limiting fees in the manner proposed by the defendants would essentially undermine the purpose of the private remedy in Magnuson-Moss, which is to enable consumers to retain counsel to pursue claims against the better heeled businesses that manufacture, distribute, and sell consumer goods. As one court noted:

> in an effort to protect the consumer from the obvious imbalance of bargaining power with a retailer or manufacturer as regards the substantive content of warranties, various State and Federal laws have been enacted which modify the applicability and operation of UCC article 2 warranties. One such enactment is the Magnuson-Moss Warranty Act (15 USC § 2301 et seq. [hereinafter the Act]). The Act provides a private right of action by a consumer purchaser of a consumer product against a manufacturer or retailer who, inter alia, fails to comply with the terms of a written warranty or any implied warranty (15 USC § 2310 [d] [1]; To the extent the Act is applicable, it supersedes inconsistent provisions of the UCC. [38]

Magnuson-Moss is a remedial statute that is to be liberally constructed in order to effectuate its purpose.[39] The court in *Jordan v. Transnational Motors, Inc.* applied this mandate of liberal construction to the question of the attorney's fee award, holding that a trial court had abused its discretion in limiting attorney's fees in Magnuson-Moss to 40% of the damages awarded, noting:

> In consumer protection as this, the monetary value of the case is typically low. If courts focus only on the dollar value and the result of the case when awarding attorney fees, the remedial purposes of the statutes in question will be thwarted. Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients. Thus, practically speaking, the door to the courtroom will be closed to all but

---

278, 792 N.E.2d 498 (2003) (trial court's complete denial of fees erroneous; even if many entries were not clear or specific enough, court should have awarded fees for hours that were adequately documented).
[37] 15 U.S.C. 2310(d)(2).
[38] *Murphy v. Mallard Coach Co.*, 582 N.Y.S.2d 528, 179 A.D.2d 187, 192 (App. Div. 1992)(internal citations omitted
[39] Jordan v. Transnational Motors, Inc., 212 Mich. Ap. 94, 537 N.W.2d 471 (1995); see also Hillery v. Georgie Boy Mfg., Inc., 341 F. Supp. 2d 1112 (D. Ariz. 2004) (Act is remedial).

those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved. Such a situation would indeed be ironic: it is precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial acts are intended.[40]

In *Jordan,* the question was whether fees should be limited to the amount in dispute, and the court properly noted that the purpose of the statute would be undermined if such limitations applied. Limiting fees to the amounts actually paid by a consumer would similarly close the courtroom doors to all except those with the resources to afford the litigation expenses involved.

### D. Due Process Limitations Do Not Preclude A Finding Of Jurisdiction

Defendants, while acknowledging that there are no "bright-line" ratios, argue that the court does not have jurisdiction because there are constitutional limitations on punitive damages. However, the existence of those limitations does not establish to a legal certainty that Plaintiff will not recover in excess of the jurisdictional limits. Indeed, the Second Circuit has held that ratios exceeding single digits may be appropriate when only nominal damages are awarded.[41] Several courts have awarded punitive damage awards that are significantly greater than the small dollar amounts awarded for actual damages, because the due process considerations were satisfied. *See e.g., Mathias v. Accor Economy Lodging, Inc.,*[42] (affirming award of $5,000 in compensatory damages and $186,000 in punitive damages for plaintiff bitten by bed bug while at motel); *Arlio v. Lively,*[43] (plaintiff improperly fired for exercise of First Amendment rights awarded no

---

[40] 212 Mich. App. at 98-99.
[41] *Fabri v. United Techs. Intl Inc.,* 387 F.3d 109, 126 (2d Cir. 2004), *citing State Farm Mut. Auto. Ins. v. Campbell,* 538 U.S. 408, 425, 123 S.Ct. 1513 (2003).
[42] 347 F.3d 672 (7th Cir. 2003).
[43] 392 F.Supp.2d 317 (D. Conn. 2005)

economic damages and $100,000 in punitive damages). These cases both involve punitive damages well in excess of $75,000 – and they also involve actual damage claims that are less the amount claimed by the Plaintiff.[44]

As of the date of this brief, Plaintiff has an actual damages claim of $12,772.81. Plaintiff recognizes that, for purposes of determining the amount in controversy, the Court may consider only the $5,429.81 alleged at the time of trial. However, in determining the proportionality of any punitive damages award, the Court should consider the total damages that Plaintiff may prove at the time of trial. To meet the jurisdictional limit of $75,000 for diversity jurisdiction, Plaintiff must recover a little less than $70,000 damages – which is about 5.5X his actual damages as measured on the date of this brief. To meet the Magnuson-Moss threshold, he would need to recover punitive damages of only about 3.5X his actual damages to date.

It cannot be said that Plaintiff cannot recover those levels of punitive damages to a legal certainty, particularly when the seriousness of the alleged conduct is considered. Unlike most cases considering punitive damages award, Plaintiff alleges that the defendants created a risk of very serious injury. The degree of reprehensibility is "the most important indicium of the reasonableness of a punitive damages award."[45] Two of the factors in measuring reprehensibility are whether the tortious conduct demonstrated

---

[44] *See also Lynn v. TNT Logistics N. Am. Inc.,* 275 S.W.3d 304, 311-13 (Mo. Ct. App. 2008) (9 to 1 ratio applied by the trial court too low to punish and deter a defendant; 75 to 1 ratio applied*); Estate of Overbey v. Chad Franklin Nat'l Auto Sales*, 361 S.W.3d 364, 373 (Mo. 2012) (ratio of 111 to 1 upheld); *Lewellen v. Franklin*, 441 S.W.3d 136 (Mo. 2014) (double-digit ratio endorsed after considering defendant's lack of remorse, refusal to rectify reckless practices, and refusal to comply with discovery); *Smith v. New Plaza Pontiac Co.*, 677 S.W.2d 941 (Mo. Ct. App. 1984) ($400 in actual and $30,000 in punitive damages, a 75-to-1 ratio, for making misrepresentations about the condition of a used car); *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354 (11th Cir. 2004) ($115 in compensatory damages and $250,000 in punitive damages, a 2,172-to-1 ratio, for fraudulent billing practices); *Parrott v. Carr Chevrolet, Inc.*, 17 P.3d 473 (Or. 2001) ($11,496 in compensatory damages and $1 million in punitive damages, an 86-to-1 ratio, for misrepresentations related to the sale of a vehicle).

[45] *BMW of North America v. Gore* 517, U.S. 559, 575, 116 S. Ct. 1589 (1996).

14

indifference to the health and safety of others and whether the harm resulted from intentional malice, trickery or deceit as opposed to mere accident.[46] These factors, both alleged in the Complaint, could potentially justify a punitive damages award that is considerably greater than the amount necessary to find jurisdiction. At the very least, it cannot be said to a legal certainty that Plaintiff will not recover those amounts, nor can it be said that he seeks those amounts in bad faith.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied.

PLAINTIFF, MICHAEL JOHNSON

BY: /s/ *Daniel S. Blinn*
Daniel S. Blinn (ct 02188)
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Road, Suite 512
Rocky Hill, CT 06067-9997
Tel. (860) 571-0408
Fax. (860) 571-7457

---

[46] *State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513. (2003).

## CERTIFICATE OF SERVICE

    I hereby certify that on this 11th day of November, 2015, copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                      /s/ *Daniel S. Blinn*
                                      Daniel S. Blinn