UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL JOHNSON,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    3:15-cv-00271-WWE |
| ROAD READY USED CARS, INC.,<br>RONALD SARACINO, and<br>GATEWAY ONE LENDING & FINANCE,<br>LLC,<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION IN LIMINE**

Plaintiff has filed a motion in limine seeking to preclude (1) evidence or argument that the vehicle at issue was sold "as is," (2) evidence or argument that the Connecticut Department of Motor Vehicles approved defendants' contract form, and (3) reference to attorney's fees. Plaintiff also requests that the Court rather than the jury determine common law punitive damages. For the following reasons, plaintiff's motion will be granted in full.

Familiarity with the factual background of this case is presumed.

**Disclaimer of the Implied Warranty of Merchantability through "as is" Sale**

"The warranty of merchantability is the broadest and most important warranty in the Uniform Commercial Code. A warranty of merchantability is implied in any sale of goods by a merchant seller; the statutory standards for merchantability include, under s 42a-2-314(2)(c), that the goods be fit for the ordinary purposes for which such goods are used." Schenck v. Pelkey, 176 Conn. 245, 253-54 (1978).

A used motor vehicle dealer may disclaim implied warranties pursuant to Connecticut General Statutes § 42-224, which provides:

"As is" sales. Disclaimer

(a) A used motor vehicle may be sold "as is" by a dealer only if its cash purchase price is less than three thousand dollars or if such used motor vehicle is seven years of age or older, which age shall be calculated from the first day in January of the designated model year of such vehicle.

(b) No "as is" disclaimer by a dealer shall be enforceable unless all of the following conditions are met:

(1) A disclaimer shall appear on the front page of the contract of sale, which shall read as follows:

> "AS IS"
> THIS VEHICLE IS SOLD "AS IS". THIS MEANS
> THAT YOU WILL LOSE YOUR IMPLIED WARRANTIES.
> YOU WILL HAVE TO PAY FOR ANY REPAIRS
> NEEDED AFTER SALE.
> IF WE HAVE MADE ANY PROMISES TO YOU, THE
> LAW SAYS WE MUST KEEP THEM,
> EVEN IF WE SELL "AS IS".
> TO PROTECT YOURSELF,
> ASK US:
> 1. TO PUT ALL PROMISES INTO WRITING, AND
> 2. IF WE OFFER A WARRANTY ON THIS VEHICLE.

(2) The text of the disclaimer shall be printed in twelve-point boldface type, except the heading shall be in sixteen-point extra boldface type. The entire notice shall be boxed.

(3) The consumer shall indicate his assent to the disclaimer by signing his name within the box containing the disclaimer.

(c) An "as is" sale of a used motor vehicle waives implied warranties but shall not waive any express warranties, whether oral or written, which may have been made nor shall it affect the dealer's responsibility for any representations which may have been made, whether oral or written, upon which the buyer relied in entering into the transaction.

(d) Nothing in sections 42-220 to 42-226, inclusive, shall be construed to limit the effect of any other requirements of law or of any representations on a certificate of title that the vehicle is in suitable condition for legal operation on the highways of this state.

Conn. Gen. Stat. § 42-224

Plaintiff argues that defendants' failure to comply with Section 42-224(b)(2)'s type size and style requirements should preclude defendants from offering evidence or argument that the vehicle was sold "as is."  Plaintiff's expert, a professional typesetter, proffers that defendants' disclosure was made in seven-point regular type, rather than the twelve-point boldface type and sixteen-point extra boldface type required by statute.  Accordingly, defendants have failed to meet the second of the three conditions required to render an "as is" disclaimer enforceable.

Defendants respond that the doctrine of substantial compliance should relieve them from having to perform in exact compliance with the statute where hyper-technical application of the statute would be unjust.  Defendants argue that, "[a]s the hyper-technical application of C.G.S. § 42-224(b) which is being advocated by the Plaintiff would yield an absurd result, the Court may look to the legislative history of the statute."

Connecticut has a "plain meaning rule" statute, whereby:

> The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.

Conn. Gen. Stat. § 1-2z

The text of Section 42-224(b) is plain and unambiguous: No "as is" disclaimer by a dealer shall be enforceable unless it is printed in twelve-point boldface type, with the heading in sixteen-point extra boldface type.  Requiring used motor vehicle dealers to strictly adhere to this statutory condition does not yield absurd results; failure to comply simply effectuates the default implied warranty of merchantability, including that upon sale the motor vehicle be fit for the ordinary purposes for which such motor vehicles are used.  Far from an unintended, unworkable result, the invalidation of fine print disclaimers is the explicit purpose of the remedial consumer

3

protection statute.

In Kinsey v. Pacific Employers Ins. Co., the Supreme Court of Connecticut found what the concurring judge called "a slender reed of ambiguity," which permitted the Court to hold that a statutory text-size requirement designed to protect individual consumers was incidental when both contracting parties were large sophisticated corporations. 277 Conn. 398, 415 (2006). The majority held:

> [T]here is no reason to require strict adherence to the twelve-point type requirement of § 38a–336(a)(2) in the context of a commercial fleet policy. Friedkin, which had more than 2700 employees and was insured under a commercial fleet policy covering more than 1000 vehicles, is not a member of the class of consumers that the legislature sought to protect when it enacted that typeface requirement. Indeed, in the arbitration proceeding, Isbell, Friedkin's vice president of risk, who signed the informed consent form on behalf of Friedkin, attested to the fact that when she endorsed the form, she was "fully cognizant of the availability, relative costs and benefits of uninsured and underinsured motorist coverage as well as the implications of selecting minimum coverage limits," and that her endorsement reflected "a conscious decision," on behalf of Friedkin, "to select uninsured/underinsured motorist limits of $40,000 in Connecticut." Under the circumstances, we are unwilling to conclude that Friedkin's request for a reduction in uninsured and underinsured motorist coverage was ineffective even though, contrary to the dictates of § 38a–336(a)(2), the heading of the informed consent form in which the request appeared was printed in eight-point type rather than twelve-point type.

Kinsey, 277 Conn. at 413-14.

Absent the ambiguity as to the applicability of the statute to large corporations, it is clear that the Supreme Court of Connecticut would have strictly applied the text-size requirement. Id. at 407 ("In view of that language, we cannot determine from the text of the statute itself whether the legislature intended the heading and typeface requirements to be strictly applied to commercial fleet policyholders in addition to noncorporate, individual policyholders."). In the instant case, there is no similar ambiguity, as plaintiff is a member of the class of consumers that the legislature sought to protect when it enacted the typeface requirement. Accordingly, the text

of Section 42-224 will be strictly applied, rendering defendants' disclaimer unenforceable. Defendants will be precluded from offering evidence or argument that the vehicle was sold "as is."

### Connecticut DMV Approval of Defendants' Contract Form

Defendants did not respond to plaintiff's motion regarding admissibility of evidence or argument that the Connecticut Department of Motor Vehicles approved defendants' contract form. Absent objection, such evidence will be precluded.

### Reference to Attorney's Fees

Plaintiff has moved to preclude reference to attorney's fees in this case to avoid prejudice, as such an award is a matter for the Court, not the jury.

Defendants respond that they ought to be permitted to expose this cynical money grab to the jury for what it is – a perversion of the public policy purpose of the fee-shifting statute – whereby the tail of this case (plaintiff's counsel's attorney's fees) is wagging the dog (actual damages).

To the contrary, "[a] clear motivation for Congress to enact Magnuson-Moss was to allow for potentially small claims in consumer actions. This court recently stated that '[g]iven the social benefit of consumer protection cases, it is good public policy to encourage the prosecution of claims that, although small, are meritorious by awarding attorney's fees. As evidenced by [the applicable section of Magnuson-Moss], that policy clearly has been adopted by Congress as well." Ernst v. Deere and Co., 92 Conn. App. 572, 578 (2005) (quoting Krack v. Action Motors Corp., 87 Conn. App. 687, 698 (2005). Moreover, Connecticut courts explicitly endorse the public policy behind disproportionately large attorney's fees awards in Magnuson-Moss cases: "Another factor that supports [a] court's high award of attorney's fees, relative to the plaintiff's

5

recovery, is the undesirability to Connecticut attorneys of relatively small dollar amount consumer cases such as the plaintiff's case." Krack, 87 Conn. App. at 697.

Defendants' position conflicts with the "good public policy" of encouraging the prosecution of consumer protection claims.  Accordingly, reference to attorney's fees will be precluded.

**Punitive Damages**

Defendants do not dispute that the Court shall determine common law punitive damages.

### CONCLUSION

For the foregoing reasons, plaintiff's motion in limine is GRANTED.  (1) Evidence or argument that the vehicle at issue was sold "as is," (2) evidence or argument that the Connecticut Department of Motor Vehicles approved defendants' contract form, and (3) reference to attorney's fees are precluded.  The Court shall determine common law punitive damages.

Dated this 22nd day of September, 2016, at Bridgeport, Connecticut.


   /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE